**1238**

Arthur SCHWARTZ

v.

William "Mike" SMITH, Jr. and William "Billy" Smith, III.

Civ. A. No. 81–4636.

United States District Court,
E. D. Louisiana.

Aug. 27, 1982.

John C. Saunders, Jr., New Orleans, La., for plaintiff.

John M. Landis, New Orleans, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any conclusions of law constitute findings of fact, they are so adopted.

### Findings of Fact

1. Plaintiff Arthur Schwartz, a resident of Maryland, is a patent attorney and a member of the bars of the District of Columbia, Maryland and Virginia. From 1972 through October 1978, plaintiff was a partner in the Arlington, Virginia law firm of Bacon & Thomas. Since that time, plaintiff has been a partner in the firm of Schwartz, Jeffrey, Schwaab, Mack, Blumenthal & Koch, P.C. of Alexandria, Virginia.

2. Defendants in this action are William Smith, Jr. (Mike Smith) and William Smith, III (Billy Smith). Defendants are residents of Louisiana. Mike Smith and Billy Smith are officers of Modern Diesel Power, Inc., a Louisiana corporation which sells marine diesel engines.

3. In 1976, Schwartz agreed to act on behalf of his personal friend, Fred Day, in securing certain United States patent rights for Day, a quadriplegic, who had invented an "insert travel chair" (hereinafter DIT–C). The DIT–C was to be used by the handicapped to facilitate travel and use of public accommodations.

4. Schwartz agreed to secure Day's United States patent rights in return for payment of out-of-pocket expenses incurred in preparing, filing and prosecuting the application. The only other compensation Schwartz received was 40 shares, or approximately 10% of outstanding shares, in YAD, Inc., a South Carolina corporation of which Day was president and controlling shareholder.

5. To secure patent protection for the DIT–C in foreign countries, the applicability of Paris Convention for the Protection of Industrial Property would in effect require that such applications be made in those countries no later than May 25, 1978. Accordingly, a few months prior to that deadline, Fred Day authorized Schwartz to file such patent applications in Canada, France, Israel, Italy, the United Kingdom and West Germany. Day reimbursed Schwartz for the fees and costs attendant to these applications.

6. In March 1978, Alex Henderson, a friend of Fred Day and his brother Jim Day, expressed interest in the DIT–C. Through Schwartz, Fred Day and YAD, Inc. entered into patent and trademark license agreements by which Henderson obtained an exclusive right to manufacture

and sell the DIT–C in several countries in Southeast Asia. Henderson also obtained an option for similar rights in Latin America.

7. Fred Day's brother, Jim, shared office space and was otherwise engaged in business with Billy Smith and Mike Smith in New Orleans. Jim Day and Mike Smith had founded Modern Diesel Power in late 1977 or early 1978. Having told the Smiths of his brother's invention, Jim put Fred in contact with Billy Smith during the latter half of April 1978 to discuss the investment potential and marketability of the DIT–C.

8. On April 26, 1978, Schwartz telephoned Billy Smith, at Fred Day's request, to further the interest expressed in the DIT–C by Billy Smith to Fred Day. During this conversation, Schwartz and Billy Smith discussed several aspects of filing foreign patent applications for the DIT–C in additional countries that had not yet been dealt with by Fred Day or Alex Henderson. Billy Smith indicated that such investment he and his father made in the DIT–C would not be through Modern Diesel Power, Inc. Rather, he indicated that a separate business entity would eventually be set up for such investment. Schwartz advised Billy Smith that foreign patent filing fees and costs would amount to approximately $850 for each additional country. Schwartz also stressed the urgency created by the May 25, 1978 deadline for filing patent applications in any additional country. Applications for trademark protection were also discussed. However, nothing definite was discussed as to the countries in which such additional filings were to be made.

9. Schwartz confirmed the telephone conversation by mailing to Billy a letter dated April 26, 1978. The two-page letter detailed the costs which previously had been incurred for Fred Day's filings and re-emphasized the foreign filing deadline. Enclosed with the letter were copies of the license agreements entered into by YAD, Inc. with Alex Henderson.

10. On or about May 4, 1978, the President's Commission for the Employment of the Handicapped sponsored a show at a hotel in Washington, D. C. Fred Day and YAD, Inc. exhibited the DIT–C at the show. Among those in attendance were plaintiff as well as one Sula O'Bannon. At Mike Smith's expense, Ms. O'Bannon attended the show to gauge public response to the chair and report on this independently to Smith.

11. On that day, and in accordance with this arrangement, Ms. O'Bannon placed a long distance call to Mike Smith from the hotel lobby to report that public reaction to the DIT–C appeared to be very good. During the same phone call, Fred Day spoke to Mike Smith. Fred Day noted the highly favorable reception, and mentioned the upcoming deadline for filing foreign patent applications. Next, Schwartz took the phone and reiterated how well the exhibit was received. Schwartz mentioned his earlier phone call and letter to Billy Smith. When Schwartz asked what he should do about the foreign filings, Mike Smith indicated that Schwartz should proceed to file in those countries which Schwartz thought would be advantageous. As to the expense, Mike Smith instructed Schwartz to "bill Modern Diesel Power."

In my view, it was implicit in this instruction that Schwartz was to send the bill for the immediate fees and costs of such filings to the Smiths at the office of Modern Diesel Power. In return for assuming these expenses, Mike Smith and Billy Smith would obtain the rights secured by the pending patent filings. Under the circumstances, the extent to which the Smiths would exploit or share the patent rights with YAD, Inc. was left undetermined at that time and would have to be determined at a later date through some sort of license agreement.

12. Gloria Parham was a secretary and receptionist for Jim Day and Modern Diesel Power during April, May and June 1978. Due to the small space shared by Jim Day and the Smiths, Ms. Parham heard many of the discussions and phone conversations which were held there concerning the DIT–C. On at least one occasion, and it is not certain on what date, Ms. Parham heard

Mike Smith tell Schwartz on the telephone to acquire the patent rights and to bill MDP for such filings.

13. By letter dated May 5, 1978, Schwartz wrote to Mike Smith via express mail to confirm that he was proceeding with the foreign filings. The letter set forth a list of eighteen countries in which Schwartz proposed to make the patent filings for Smith. Schwartz estimated the cost per country, due to the late date, to be about $1,000. The letter indicated that Schwartz's law firm had a policy, in such urgent cases, of requiring an advance retainer. In light of the policy, the letter continued, Schwartz requested that Mike Smith call to confirm the entire list or otherwise make some indication "that you do not wish to cover the filing of some or all of these countries." Schwartz concluded the letter indicating that he would expect a phone call from Mike Smith on May 8.

14. Mike Smith received the above described letter within a few days after it was mailed. Billy Smith also saw the letter. By virtue of the May 5, 1978 letter, if for no other reason, it was clear to Mike and Billy Smith that Fred Day and Arthur Schwartz were looking to the Smiths for payment of the foreign filing fees. However, neither Mike Smith nor Billy Smith responded to Schwartz's letter or took any other action to indicate that they would not pay for such fees.

15. On May 7 or 8, Billy Smith told Fred Day to proceed with the foreign filings. On May 8, Schwartz telephoned Billy Smith. Among other items discussed concerning the foreign filings, Billy Smith indicated that he or Mike Smith would send Schwartz the money he requested. Schwartz told Billy Smith that he need not wire the money but instead could simply send a check.

16. Schwartz, through his law firm's foreign associates, filed the foreign patent applications in the eighteen countries at a cost to the firm of $12,814.05 in filing fees. Bacon & Thomas, Schwartz's law firm, also incurred expenses of $1,020.00 for postage, drawings, copying, telephone communication, delivery and other related charges.

The cost of the approximately 50 hours of work performed by Schwartz, together with his law partner and their support staff, amounted to $4,327.55.

17. These foreign patent applications were necessarily filed in the name of the inventor, Fred Day.

18. Subsequent to the filings, in early June 1978, Mike Smith, Billy Smith and others met with Fred Day and Schwartz in Charleston, South Carolina. The main topic for discussion was the manufacture and sale of the DIT–C. When the subject turned to the costs for filing the eighteen foreign patent applications, Mike Smith again indicated that he intended to pay these costs.

19. Sometime shortly after the Charleston meeting, Billy Smith attended a show in Palm Springs, California, sponsored by the Disabled American Veterans. The DIT–C was being exhibited by YAD, Inc. and Billy Smith attended to discern reaction to the invention.

20. By letter dated July 19, 1978, and marked "URGENT," Schwartz wrote to Mike Smith outlining the foreign patent filing costs and clearly indicating that these costs were incurred on behalf of Mike and Billy Smith. Schwartz enclosed copies of draft license agreements to be executed by Mike Smith and/or Billy Smith. On these agreements, the name of the corporate licensee was left blank. Although both Mike and Billy Smith saw this letter shortly after it was mailed, neither person responded to Schwartz.

21. Within the week, Schwartz called Billy Smith. When asked, Billy Smith gave no indication that he and his father would not pay the foreign patent filing fees.

22. Despite the considerable amount of work that went into the timely filing of the eighteen foreign patent applications, Schwartz discontinued all efforts to finalize the patents once it was apparent to him that the money he requested from the Smiths was not forthcoming. As a result, most of the patents were never issued, and those that were issued ultimately lapsed for failure to pay additional fees. Fred Day

was satisfied with the six foreign filings which Schwartz previously had made on his behalf, and, thus, had never requested that these additional filings be made. Moreover, neither Schwartz nor Fred Day attempted to market or otherwise negotiate the rights to the DIT–C with anyone other than the Smiths during April through August 1978.

23. During a restructuring of the law firm of Bacon & Thomas, Schwartz was assigned the right to the account which includes the unpaid foreign filing fees.

### Conclusions of Law

1. This court has jurisdiction over this action under 28 U.S.C. § 1332.

2. Plaintiff Schwartz brought this action for damages against Mike Smith and Billy Smith alleging that defendants breached an oral contract to pay for the foreign filing fees, or in the alternative, that defendants are obligated to pay such amount on the basis of quasi-contract and quantum meruit. Defendants deny the existence of an oral contract and further contend that plaintiff is not entitled to quasi-contractual relief. Specifically, defendants contend that they expressly conditioned their consent to pay the filing fees upon the execution of a license agreement with Fred Day, which agreement was never executed.

3. The facts in this case reflect a series of verbal and written communications which were made by the parties within the context of their professional or business activities. However imperfect or ambiguous the contents of these communications may appear in hindsight, it is upon these communications that a conclusion as to the existence of a legally enforceable contract must be drawn.

4. By end of the May 4 telephone conversation which took place during the President's show in Washington, D. C., the facts indicate that Mike Smith had given Schwartz sufficient express authority to proceed with foreign filings, for Smith's benefit and at Smith's expense. Out of caution, by letter dated May 5, Schwartz afforded Mike Smith and Billy Smith an opportunity to withdraw such authorization, in whole or in part. However, defendants failed to respond in any manner which would have negated Schwartz's authority to file patent applications on their behalf.

5. The evidence does not support defendants' contention that their consent to pay plaintiff for the filings was subject to any condition. The filings were initiated on May 8 and thus appear to have been made as a result of the May 4 phone conversation and the subsequent response (or, more appropriately, lack of response) to the May 5 letter. Any statements which might have been made at or after the June 1978 meeting in Charleston to attach a condition to defendants' consent would have had no effect on the authorization under which Schwartz acted when he commenced the eighteen additional foreign filings.

6. Having found that an oral agreement was entered into whereby Mike Smith and Billy Smith would bear the expenses directly incurred by Schwartz in filing the foreign patent applications, I conclude that defendants are liable to plaintiff for the amount of the filing fees, $12,814.05, and office expenses, $1,020.00.

Accordingly, plaintiff is directed to submit a judgment in favor of plaintiff and against defendants in the amount of $13,834.05, plus costs and interest from the date of judgment.